## PLATT v. MOORE.
### No. 5643.

Court of Civil Appeals of Texas. Amarillo.
Sept. 25, 1944.

Rehearing Denied Oct. 30, 1944.

W. T. Brothers, of Amarillo, for appellant.

A. A. Lumpkin and W. J. Flesher, both of Amarillo, for appellee.

STOKES, Justice.

This action was instituted by the appellant, Lena A. Platt, as an adoption proceeding under Article 46a, Vernon's Annotated Civil Statutes. She alleged that she was the maternal grandmother of Joe Midge Moore, a boy five years of age; that the child's mother died December 23, 1943; that the father, Dee Moore, had voluntarily abandoned and deserted the child for a period of more than two years and had left him to the care, custody, control, and management of other persons; that he had contributed nothing to the support of the child and had thereby forfeited all parental rights to the child; wherefore, she alleged, her right to adopt the child was in no manner dependent or conditioned upon the consent in writing of the father, Dee Moore. In her amended petition she alleged that only recently the father, Dee Moore, had taken possession of the child in a violent and fraudulent manner and she prayed for an order directing him to produce the child in court. The order was served upon Dee Moore and, designating himself as respondent, he appeared and answered by numerous special exceptions, general denial, and sufficient special pleas to put in issue the question of

whether the appellant had the legal right to adopt the child.

The case was submitted to the court without the intervention of a jury and judgment was entered denying appellant's application, to which she duly excepted, gave notice of appeal, and has perfected an appeal to this Court where she complains of the action of the court below, assigning six points of error, but, in the view we take of the case, it will not be necessary to discuss them in detail. The controlling issue made by the pleadings and the evidence relates to the question of whether the appellee had voluntarily abandoned and deserted the child for a period of two years, or more, prior to the filing of the application for adoption. No contention is made that he had given his consent in writing to the adoption by appellant, but appellant contends that the conduct of appellee during the two years, and more, preceding the filing of her application was such as to constitute an abandonment and desertion of the child and, therefore, under Section 6 of Article 46a, she had the right to adopt the child without such consent and the court erred in denying her that right.

The record shows that on January 29, 1938 the appellee and appellant's daughter, Mary Dell Platt, were married at Canyon in Randall County and that they lived together until sometime in the following summer. Mary Dell was in delicate health and in the summer of 1938 she was stricken with what was thought to be appendicitis and removed to a hospital. An examination disclosed, however, that her illness was due to pregnancy of about three months' duration. She remained in the hospital for about ten days and upon the advice of the physician and the insistence of the appellant, instead of returning to the apartment where she and appellee had been living, she went to the home of her mother, the appellant. This was over the protest of the appellee, who demanded that she return to their apartment with him and, upon her refusal to do so, he became angry and told her, in effect, that he was through with her and would not further live with her. After Mary Dell went to appellant's home, the appellee visited her two or three times and upon each of the visits he insisted that she return and live with him. Being unsuccessful, within a few days he left Canyon and went to the home of his parents at Graham in Young County, where he remained until the summer of 1942, when he returned and demanded that

Mary Dell leave her mother's home and live with him as his wife. The child was born on March 13, 1939, and the testimony shows that thereafter Mary Dell's health was exceedingly delicate and she was confined to her bed at the time appellee visited her in 1942. Appellant testified that the visit of appellee to his wife and his demands that she leave her mother's home and live with him greatly excited and disturbed Mary Dell and that after this visit, at the request of Mary Dell, she sought to enlist the assistance of the sheriff to prevent appellee's visits. She said she told appellee that if he came there and molested Mary Dell, she (appellant) would "fill him full of shot." The testimony further shows that appellee sought to enlist the assistance of the sheriff to enable him to see his wife and child, but the sheriff declined to intervene in the matter and appellee then returned to the home of his parents at Graham, where he remained until about the time this proceeding was instituted. It further shows that at no time did he contribute to the support of the child and that during all of the time from its birth until its mother's death on December 23, 1943, a period of almost five years, the child was in the custody and control of its mother, who lived with the appellant until her death. After her death, the child remained in the custody of appellant until January 5, 1944, a period of about two weeks. On January 5, 1944 the appellee went to Canyon and, observing the child on the street in the business section, he forcibly took the child from his aunt who was accompanying him, returned with the child to the home of appellee's parents at Graham, and he has had the custody of the child since that time.

The case is governed exclusively by the provisions of Section 6 of Article 46a, Vernon's Annotated Civil Statutes, which provides: "Except as otherwise amended in this Section, no adoption shall be permitted except with the written consent of the living parents of a child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, and such parent or parents so abandoning and deserting such child shall not have contributed to the support of such child during such period of two (2) years, then in such event it shall not be necessary to obtain the written con-

sent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence, or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence.
* * * "

█ █ It has been held in a number of cases in other jurisdictions that the abandonment or desertion of a child, as contemplated by statutes similar to ours, consists of an absolute relinquishment of the custody and control of the child and the willful purpose and intention to relinquish the benefit of the rights to which the parent is entitled under the law. Merely permitting the child to remain for a time in the undisturbed care of others does not constitute such a desertion or abandonment of the child as would deprive the parent of the right to prevent its adoption by others. Truelove v. Parker, 191 N.C. 430, 132 S.E. 295; In re Cozza, 163 Cal. 514, 126 P. 161, Ann.Cas.1914A, 214; In re Kelly, 25 Cal.App. 651, 145 P. 156. See, also, Stanton v. Franklin, 236 S.W. 151.

█ We think the holdings in the cited cases correctly interpret the law as it is written in our statute, and we do not find anything in the testimony which, in our opinion, establishes the allegations of appellant or that would have warranted the court below in concluding that appellee had abandoned his child in the manner required by the statute. It is true that he left his wife a few months before the child was born, apparently with the purpose of remaining away from her, and that he did not return or make any effort to re-establish the family relationship for about three years. It is also true that his efforts thereafter to re-establish such relationship were weak and inconsequential and that he did not contribute anything whatever to the support of the child during all of that time, a period of about five years. The testimony shows, however, that the separation was brought about by virtue of a misunderstanding between appellee on the one hand and his wife and the appellant on the other. Regardless of whether the appellee was justified in demanding that his wife return from the hospital to the apartment in which they had been living and continue to live with him instead of going to her mother's home where she could un-

doubtedly be better cared for, the testimony shows that the controversy precipitated by Mary Dell's determination to go to her mother's home, and appellant's insistence that she do so, was the cause of the original separation. Furthermore, we might say that, whether or not the appellee was justified in demanding in 1942 that his wife leave her mother's home and return to him, the fact is, as clearly revealed by the testimony, that the refusal of his wife to return to him, although perhaps justified under the circumstances, the controversy between appellee and appellant which followed, and the appellant's appeal to the sheriff and her threat to the effect that if appellee attempted to come to her home and molest his wife while she was in a delicate state of health appellant would resort to violent means to prevent it, constituted the reason for appellee's continued absence from his family. We have not been directed to any testimony, nor have we found any in the voluminous statement of facts which indicates, or even suggests, that appellee's conduct was prompted by an intention to abandon his child, or any reason, other than those we have mentioned, why he remained away from his family during approximately five years after the birth of the child.

As we have stated above, at one time during the period mentioned, appellee sought to enlist the assistance of the sheriff of Randall County in seeing his wife and child and, according to the sheriff's testimony, it was principally for the purpose of seeing the child. Moreover, the child was in the custody of its mother during all of the time in question and appellee would not have been warranted in concluding that he might be able to take from his wife the custody of a child of such tender years and maintain it in the home of his father and mother who were aged people. The circumstances of all of them were such that obviously neither he nor his parents could have given to the child the care and attention to which such a child is entitled and which it must have if it is properly cared for, nourished, and developed.

What we have said is not necessarily in justification of the conduct of the appellee toward his wife and infant son. We are not passing upon the question of whether he discharged his duty as a husband and father, but only upon the question of whether he had abandoned and deserted his child as alleged by the appellant. In

our opinion, his conduct did not constitute such an abandonment and the court below would not have been warranted in so concluding. The judgment entered was, therefore, the only judgment that could have been properly entered under the testimony. To say the least, it had ample support in the testimony and, under the well-established rules of our practice, we are therefore without authority to disturb it.

■■■ Both parties have devoted considerable portions of their briefs to the discussion of the respective fitness and qualifications of the parties to have the care, custody, and control of the child. Appellant insists that in a contested adoption case the equity jurisdiction of the court must prevail and the welfare of the child must override the parental rights. We cannot agree with appellant in this contention. The Legislature has enacted into the law the conditions upon which a minor child may be adopted and until those conditions are met, the fitness and qualifications of the respective parties are incidental. Until the conditions laid down by the statute are complied with, there is no discretion resting in the court to consider the interest of the child in disregard of the wishes of its parents. If the court were invested with such discretion in an adoption case, it would be the possible means of forcibly destroying the family fireside, subverting the sacred relations that exist between parents and their children, and capriciously depriving natural parents of their children and transferring them to strangers merely because the court or jury trying the case deemed it advisable for the interest of the children that their custody be changed. No such discretion is lodged in our courts by the adoption statute. Under the provisions of Section 6 of Article 46a, the consent in writing of the parent or parents, if living, must be shown, or the allegations and proof must reveal the existence of such conditions as amount to an abandonment or desertion of the child. In the absence of a satisfactory showing of one or the other of these, the court is not authorized to permit the adoption. If there exists such dereliction of parental duty as to necessitate the removing of the custody of children from their parents, ample means have been provided by the Legislature through the juvenile courts act, Article 2329 et seq., R.C.S.1925, Vernon's Ann. Civ.St. art. 2329 et seq., to relieve children and society of the baleful consequences of such depravity. While the adoption statute contemplates the trial court shall satisfy itself of the fitness and qualifications of those applying for the adoption of children and of the environments into which they will be cast if the adoption is granted, such concern of the courts arises only after the written consent of the parents, if living, has been given, or it has been shown that they abandoned and deserted the child or children for a period of at least two years. It is not necessary, therefore, for us to pass upon the fitness and qualifications of the respective parties because, as we have already said, the court was not warranted in going into that matter until the conditions laid down by the statute were met.

We have carefully examined all of the contentions presented by appellant, and from what we have said, it is evident that, in our opinion, no error is shown. The judgment of the court below will therefore be affirmed.