**Timmie Gayle SMITH et vir, Appellants,**

**v.**

**John P. WALLER et ux., Appellees.**

**No. 16856.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 17, 1967.

Rehearing Denied Dec. 22, 1967.

Byrom, Wright, Butcher & Prager, and Don Prager, Fort Worth, for appellants.

Chambers & Hight, and John H. Chambers, Arlington, for appellees.

## OPINION

LANGDON, Justice.

This is an adoption proceeding. Timmie Gayle Ellison and Milton Edward Ellison were formerly husband and wife. Two children were born of their marriage, which was dissolved by divorce on March 10, 1960. In its judgment the court awarded the custody and control of Debra Gayle Ellison, a girl 3½ years of age (in 1960), to the mother (with visitation privileges to the father), and the custody and control of Miltonette Arlene Ellison, a girl one year of age (in 1960), to the father (with visitation rights to the mother). Visitation privileges as to each child were likewise granted to the paternal and maternal grandparents. The father, Milton Edward Ellison, was ordered to pay the sum of $7.00 per week for the support of Debra Gayle Ellison. The mother, Timmie Gayle Ellison, was not required by the divorce judgment to make child support payments.

Subsequent to the divorce each of the parents remarried. The mother, Timmie Gayle Ellison, married Charles W. Smith in 1961. They reside in California where the mother has resided since sometime prior to the divorce. Debra Gayle Ellison is now and has always been in the care and custody of her mother.

Miltonette Arlene Ellison, hereinafter referred to as Toni, whose custody and control was awarded to her father (Milton Edward Ellison), resides with Emma Luvader Waller, her paternal grandmother, and her husband, John P. Waller, the mother and stepfather, respectively, of her father. Except for approximately twelve months she has been with the Wallers her entire life. Her residence with them commenced during the period her parents were separated prior to the divorce in 1960. Since the divorce the legal custody and control of Toni has been vested in her father who under the

judgment has the duty and the responsibility to provide for her care and support. It is he and not the appellant who arranged for his parents to assume the physical custody and control of Toni. The record does not reflect any objection on his part to the fact that his parents, who were given visitation rights under the divorce judgment of 1960, have assumed the entire burden of the physical custody and care of his daughter which was imposed upon him by the court. The natural mother has made no protest as to this arrangement nor is she required to do so. She has not in the past sought a change in custody nor does she seek such a change by these proceedings. Her parents, Mr. and Mrs. T. M. Eure, the maternal grandparents, and the Wallers, have until these proceedings, been very cordial and cooperative in connection with visitation rights, as have the natural parents. Through her parents, the appellant has maintained a source of information as to the welfare and needs of her child, Toni. The mother has never been called upon by her former husband or his parents for any financial assistance. Nor is there anything in the record to indicate that she would have failed or refused to assist financially had she been requested to do so.

During the period following the divorce and leading up to these proceedings the mother visited her child in Tarrant County on many occasions. There is testimony and other evidence that she provided some money and gifts of clothing and other items for her daughter and sent messages and greetings to her from time to time. It is apparent that the some two thousand miles separating California and Texas would limit visitations on the part of the mother because of the time and expense of travel involved.

It was against this background that Emma Luvader Waller and husband, John P. Waller, with the written consent of the natural father, filed a petition to adopt Toni, without the consent of the natural mother who vigorously contested the proceedings.

On February 10, 1967, the court granted the adoption solely upon that portion of Article 46a, Vernon's Ann.Civ.St., Sec. 6, which provides in part as follows: "Except as otherwise provided in this Section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default * * *."

The appellant has perfected her appeal from the judgment of adoption.

We reverse and render.

■ "While adoption statutes are to be liberally construed in favor of minors in order to effectuate their beneficial purpose, Woodall v. Schmudlach, Tex.Civ.App., 299 S.W.2d 780, the rule of strict construction applies in favor of a non-consenting parent. Jones v. Willson, Tex.Civ.App., 285 S.W.2d 877. Especially so 'in those cases where it is claimed that owing to misconduct his consent to the adoption is not required. Every intendment should be made in such case in favor of the parent's claim; and where the statute is open to construction and interpretation, it should be construed in support of the parent's natural rights.' 1 Am.Jur. pp. 626, 627." Stinson v. Rasco, 316 S.W.2d 900 (Dallas Civ.App., 1958, no writ hist.).

■ Since it is undisputed that the natural mother did not give her consent to the adoption, it was necessary, therefore, that the requirements of the statute be established under "the rule of strict construction" in favor of the non-consenting parent

before the application for adoption could properly be granted. Johnston v. Chapman, 279 S.W.2d 597, 599 (Amarillo Civ.App., 1955, no writ hist.).

"It has been held in a number of cases in other jurisdictions that the abandonment or desertion of a child, as contemplated by statutes similar to ours, consists of an absolute relinquishment of the custody and control of the child and the willful purpose and intention to relinquish the benefit of the rights to which the parent is entitled under the law. Merely permitting the child to remain for a time in the undisturbed care of others does not constitute such a desertion or abandonment of the child as would deprive the parent of the right to prevent its adoption by others. Truelove v. Parker, 191 N.C. 430, 132 S.E. 295; In re Cozza, 163 Cal. 514, 126 P. 161, Ann.Cas.1914A, 214; In re Kelly, 25 Cal.App. 651, 145 P. 156. See, also, Stanton v. Franklin, [Tex.Civ. App.] 236 S.W. 151." Platt v. Moore, 183 S.W.2d 682 (Amarillo Civ.App., 1944, ref., w.m.).

See 35 A.L.R.2d, page 662, as to what constitutes abandonment or desertion of a child by its parent or parents within the purview of adoption laws. At page 664, § 2, it is stated: "The overwhelming weight of authority is that an abandonment or desertion within the purview of the adoption law must be absolute, complete, and intentional." At page 664, § 3, of the same text, under "General definitions," appears the following: "Among the numerous definitions of abandonment of a child within the purview of the adoption laws, the most frequently approved one is that abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child."

"Where, as here, the father has been awarded custody of child in original divorce proceedings, the mother cannot, during such period, be chargeable with desertion (abandonment). Freeman v. State, 103 Tex.Cr.R. 428, 280 S.W. 1069; Jones v. State, 159 Tex.Cr.R. 18, 261 S.W.2d 324; Gomez v. State, 163 Tex.Cr.App. 99, 289 S.W.2d 269, 73 A.L.R.2d 958. This rule has been held controlling of adoption cases where the exceptions of art. 46a are sought to be established. Lee v. Purvin, Tex.Civ.App., 285 S. W.2d 405; Purvin v. Lee, Tex.Civ.App., 300 S.W.2d 339; Ex parte Payne, Tex.Civ.App., 301 S.W.2d 194." Trotter v. Pollan, 311 S. W.2d 723 (Dallas Civ.App., 1958); Trotter v. Pollan, 158 Tex. 494, 313 S.W.2d 603 (1958).

Under these authorities the appellant is not chargeable with desertion or abandonment during the period subsequent to the divorce because the father was awarded custody. Since the child was only one year old at the time of the divorce the appellant is not chargeable with a two year period of abandonment prior to the divorce action in 1960.

As applied to the particular facts of this case it would appear that the rule in Trotter v. Pollan, supra, above quoted relating to desertion (abandonment) should be the same on questions relating to support where as here the father and not the mother was required to pay child support in the original divorce proceedings.

"Where the divorce decree provides for the support of the children there is no liability, as between the parties, other than as ordered by the court. Thus, as between the father and mother, the father may be relieved from his liability of support where the decree in the suit for divorce imposes that liability on the mother." 21 Tex.Jur.2d 8, § 385.

"When the divorce decree does not provide for child support, its silence places the duty of support, as between the parties, on the father, since he has the primary duty of support." 21 Tex.Jur.2d 9, § 386.

"The father must continue to discharge his obligation to support his children of a dissolved marriage, when this obligation exists, even though the divorce decree is silent

as to custody or awards custody to the mother, and regardless of the person in whose hands the child is placed. Not even the fact that the mother, in whose custody the children are placed, has ample means and is well able financially to support the children affects the father's obligation of support. Nor does remarriage of the divorced wife and support of the child by her present husband relieve the former husband from his responsibility to support his children." 21 Tex.Jur.2d 12, § 390.

 Although the obligation to support and educate their children rests on both parents, the duty to do so is primarily that of the father as head of the family. He is not released from his obligation because of the fact that his child or children may be in the custody of other persons. Dilger v. Dilger, 271 S.W.2d 169 (Amarillo Civ.App., 1951, no writ hist.).

We are unable to find any evidence in this record which will support a finding that the appellant voluntarily abandoned her child. It was the father, not the appellant, who placed Toni with his parents and left her to their care, custody, control and management. The appellant was not consulted on the matter. She was not given the opportunity of assuming the care and custody of her child as an alternative to the Wallers. There is no indication in the record that she would have refused such an alternative had the opportunity been afforded her.

Since custody was awarded to the father under the 1960 divorce judgment the appellant thereafter was powerless to exercise any control, care or management over her child. There were no proceedings by which the original custody or child support provisions of the 1960 divorce judgment were changed or sought to be changed.

The Wallers made no protest to the appellant nor did they complain to her about additional expenses involved in their care and support of the child.

As previously stated, the Wallers were given the privilege of reasonable visitation with both children under the 1960 divorce judgment. It was not incumbent upon the appellant to inquire into any extended period of visitation or physical custody exercised by the Wallers in the absence of some complaint or protest on their part.

In view of our holding in this case we see no reason to discuss the numerous other questions and complicated facts raised on this appeal.

The judgment of the trial court granting the adoption is reversed and judgment here rendered dissolving and setting aside said adoption decree.

Reversed and rendered.